```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Shelonda Petty,

    Plaintiff,

    v.                        Case No. 2:13-cv-1110

Russell Cellular, Inc.,

    Defendant.


OPINION AND ORDER

    This is an action with class allegations filed by plaintiff Shelonda Petty, asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, <u>et</u> <u>seq</u>. against her former employer, Russell Cellular, Inc. Count One of the complaint alleges violations of the FLSA overtime provisions, 29 U.S.C. §207(a)(1). Count Two, which alleged that defendant violated the FLSA's recordkeeping requirements, was dismissed by order dated January 30, 2014. In Count Three, plaintiff seeks a declaratory judgment, specifically, a declaration that she and other similarly-situated employees are entitled to be paid for the hours they expended making bank deposits required by defendant after the end of their paid shifts. This matter is before the court on plaintiff's motion for conditional certification of a collective action pursuant to 29 U.S.C. §216(b) and court-authorized notice.

    The FLSA provides a private cause of action against an employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." §216(b). This type of suit is called a "collective action," which is distinguishable from the opt-out approach used in class actions under Fed. R. Civ. P. 23. <u>Comer v. Wal-Mart Stores, Inc.</u>, 454 F.3d

544, 546 (6th Cir. 2006). The determination whether to allow an action to proceed as a collective action is left to the trial court's discretion. <u>Id.</u> A two-stage procedure is employed in the certification of a collective action. At the first stage, certification is conditional. <u>Id.</u> Section 216(b) imposes two requirements for conditional certification: 1) the plaintiff must actually be "similarly situated" with other proposed class members, and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action. <u>Id.</u> At the second stage, following notice to class members and discovery, the trial court examines more closely the question of whether particular members of the class are, in fact, similarly situated. <u>See</u> <u>id.</u> at 547. At that stage, the defendant can move to decertify the collective action on the ground that the plaintiffs are not similarly situated, <u>see</u> <u>Harrison v. McDonald's Corp.</u>, 411 F.Supp.2d 862, 864-65 (S.D. Ohio 2005), or based on the individualized nature of plaintiff's claims, <u>see</u> <u>Swigart v. Fifth Third Bank</u>, 276 F.R.D. 210, 213 (S.D. Ohio 2011). Plaintiff bears the burden of showing that the opt-in plaintiffs are similarly situated to her as the lead plaintiff. <u>O'Brien v. Ed Donnelly Enterprises, Inc.</u>, 575 F.3d 567, 584 (6th Cir. 2009); <u>Harrison</u>, 411 F.Supp.2d at 865 (plaintiffs must establish a colorable basis for their claim that a class of "similarly situated" plaintiffs exists). However, the "similarly situated" requirement in §216(b) is less stringent that the requirements for certification of a Rule 23 class action. <u>O'Brien</u>, 575 F.3d at 584-85. Showing a "unified policy" of violations is not required. <u>Id.</u> Plaintiff is only required to show that her position is similar, not identical, to the positions

held by the putative class members.  Comer, 454 F.3d at 546-47; Pritchard v. Dent Wizard Int'l Corp., 210 F.R.D. 591, 595 (S.D. Ohio 2002).  Plaintiffs are similarly situated "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs."  O'Brien, 575 F.3d at 585.

Although some courts hold that plaintiff can demonstrate that potential class members are "similarly situated" for purposes of receiving notice, other courts require plaintiff to produce some factual support for the allegations before issuance of notice. Pritchard, 210 F.R.D. at 595-96.  Because the court has minimal evidence at this stage, the determination is made "using a fairly lenient standard."  Swigart, 276 F.R.D. at 213; see also Comer, 454 F.3d at 547 (noting that application of this lenient standard typically results in conditional certification of a representative class).  Authorized notice need only be based on a modest factual showing, which may include affidavits of potential plaintiffs or evidence of a widespread policy or plan.  Id. at 596.

In determining whether a factual basis exists to support an allegation of class-wide FLSA violations, courts consider: 1) whether potential plaintiffs were identified; 2) whether affidavits of potential plaintiffs were submitted; 3) whether evidence of a widespread illegal plan was submitted; and 4) whether, as a matter of sound class management, a manageable class exists.  Lewis v. Huntington National Bank, 789 F.Supp.2d 863, 868 (S.D. Ohio 2011).

Potential plaintiffs have been identified in this case. Plaintiff alleges in her complaint that she worked for defendant as a cellular phone sales person in defendant's store in Gallipolis,

3

Ohio, from August 21, 2009, through November 1, 2013.  Complaint, ¶ 10.  She alleges that she worked as a full-time employee, working at least forty hours per week, and that she was frequently required to take checks and cash from the store to the bank for deposit in defendant's account following the end of her shift, which involved a substantial time commitment.  She alleges that she was not paid for this post-shift work. Complaint, ¶¶ 14-15.  Plaintiff further alleges that defendant's requirement that employees make bank deposits after the end of their paid shifts constituted a written, company-wide policy.  Complaint, ¶ 16.  Prior to commencing her employment with defendant, plaintiff was required to sign an agreement which stated that bank deposits were to be made at the end of the day.  Complaint, ¶ 17.  Plaintiff alleges that defendant's requirement that employees make bank deposits at the end of their paid shifts is applicable to hourly employees in all of its stores.  Complaint, ¶ 18.  She alleges that the persons similarly situated to her are "[a]ll present and former non-exempt employees who worked for Russell Cellular, Inc. at one of its retail stores during the three years preceding the commencement of this action."  Complaint, ¶ 23.

Plaintiff has submitted a declaration in which she states that she was a full-time hourly wage employee for defendant from August 21, 2009, through November 1, 2013, at defendant's store in Gallipolis, Ohio.  Petty Decl., ¶¶ 1-2.  Plaintiff has also submitted declarations from nine employees who are either current or former employees of the defendant, and who worked for defendant during the time period beginning in 2010 as sales representatives, assistant managers or managers in defendant's stores in different

locations throughout the country. In these declarations, the employees state that they are or were full-time employees, and that they were required to make bank deposits after the end of their paid shifts.

Defendant argues that these employees are not similarly situated because only plaintiff's declaration states that she worked forty hours per week. However, plaintiff also stated that she was a full-time employee, and the other employees state in their declarations that they were full-time employees. Therefore, it is reasonable to infer that they also worked forty hours per week. With her reply memorandum, plaintiff has also presented supplemental declarations from Calvin Boekhoven and Artica Ray, in which they state that as full-time employees at defendant's stores, they worked forty hours per week unless some matter such as a sick day arose. See Ray Decl., ¶ 1 (stating that "[f]ull-time at Russell Cellular meant forty hours per week[.]") Defendant has submitted the declaration of Robert Lister, Vice-President of Finance, who states that in 2013, the average number of hours worked by wireless specialists throughout defendant's system was 38.81 hours per week. Lister Decl., ¶ 11. This figure simply amounts to forty-hour work weeks with approximately eight days vacation or sick leave per year.[1]

The court also notes that the fact that some of the employees plaintiff seeks to include in the collective action are managers and assistant managers, whereas some, including plaintiff, are

---

[1] This figure is demonstrated by the following ratio:

$$\frac{38.81 \text{ hours}}{40.00 \text{ hours}} = \frac{50.453 \text{ weeks per year}}{52 \text{ weeks per year}}$$

5

sales representatives, does not preclude these employees from being similarly situated. Plaintiff's claim involves the narrow issue of whether defendant committed an FLSA violation by requiring her to make bank deposits after going off the clock, a task which was allegedly performed by all of the putative class members. See O'Brien, 575 F.3d at 586 (rejecting argument that managers could not be similarly situated because "managers could also have been cheated by defendants"). The declarations plaintiff has submitted indicate that sales representatives and managers were required to make after-hours bank deposits. Thus, even though they may have occupied different positions in the stores, they were all allegedly impacted the same way by the alleged FLSA violation, and they are similarly situated in that respect.

Plaintiff has also submitted evidence to support her allegations of a widespread plan. Plaintiff stated in her declaration that she was required to sign a "Sales Person Signature Agreement." Petty Decl., ¶ 3. She has submitted a copy of the agreement, which states that "[b]ank deposits are to be made at the end of each day." Plaintiff further stated that after she began her employment at the store, she learned that every day on which she received money as customer payments, she had to deposit that money in the defendant's bank after her shift and off the clock. Petty Decl., ¶ 4. Plaintiff stated that whenever she questioned this policy, her supervisors directed her attention to the agreement she had signed, and told her that she had already agreed to make these off-the-clock deposits. Petty Decl., ¶ 5.

Plaintiff has also submitted two audio recordings which were obtained by Terri Spradlin, the store manager at the defendant's

6

store in Englewood, Ohio.  Plaintiff has submitted Spradlin's declaration authenticating these recordings.  The first conversation Spradlin had was with her district manager, David Cohen.  Cohen told her that "you're supposed to clock out and then take your deposit" and that "you're doing it for business even though you're not technically clocked in."  Ex. 5.  The second conversation is a phone conversation between Spradlin and Kaitlyn Van Huis of defendant's human resources department in Springfield, Missouri.  Spradlin asked if she could stay clocked in, leave and make the bank deposit, and then return to the store to clock out.  Van Huis told Spradlin "you did sign an agreement saying that you would take your deposits to the bank ... off the clock, you did agree to that ... at time of hire."  Ex. 6.

Defendant contends that its policy of requiring employees to make bank deposits after the end of their shifts is not illegal under the FLSA.  Defendant argues that under 29 C.F.R. §785.47, it is not required to pay employees for time beyond scheduled working hours that is insubstantial or insignificant, and that plaintiff has failed to show a company-wide policy of not paying for extra time that was substantial or significant.  Defendant also asserts that a collective action should not be certified because, under 29 U.S.C. §254(a)(1), it is not required to pay for the amount of time employees spend traveling to and from work.  Defendant posits that some of its employees may have simply made the bank deposits in question while on their way home, and that such time should not be chargeable as overtime.

In determining whether to conditionally certify a collective action under §216(b), "district courts within the Sixth Circuit

7

typically do not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues." Swigart, 276 F.R.D. at 214 (noting that it was inappropriate at the certification stage of the lawsuit to engage in a merits analysis of defendant's good faith defense); see also Struck v. PNC Bank N.A., No. 2:11-CV-982, 2013 WL 571849 at *4 (S.D. Ohio Feb. 13, 2013)(court will not evaluate the merits of defendant's argument that its policy was not unlawful at pre-discovery stage of proceedings); Lewis, 789 F.Supp.2d at 867 (noting that because the commencement of a collective action under §216(b) does not toll the statute of limitations period for plaintiffs who have failed to opt in, the motion for conditional class certification should be addressed before employer's defense on the merits was ripe).

The parties have not yet engaged in discovery. In addressing the issue of conditional certification, this court does not have sufficient evidence before it to consider the merits of these defenses posed by defendant. These arguments do not constitute a barrier to conditional class certification. All plaintiff is required to show at this stage is that the potential plaintiffs are "unified by common theories of" defendant's statutory violations. O'Brien, 575 F.3d at 585 (emphasis supplied). Plaintiff, Boekhoven and Ray all stated in their declarations that they and other employees spent substantial time making after-hours deposits at the banks where defendant's accounts were located. The evidence submitted by plaintiff is sufficient to support a colorable claim that a company-wide policy illegal under the FLSA existed for purposes of conditional certification.

In regard to the fourth factor, whether a manageable class exists, defendant argues that certification is inappropriate because individual questions, such as the amount of time spent on deposits by each employee, the hours worked by each employee on a given day, the location of the banks, and the dates of the deposits, will predominate.  In his declaration, Lister stated that defendant has 191 retail stores, and employed over 2,000 different hourly employees from November 8, 2010, through January 27, 2014.  Lister Decl., ¶¶ 5-6.  Lister also stated that not every hourly employee made a deposit on each and every day that the employee worked.  Lister Decl., ¶ 8.

However, §216(b)'s similarly situated requirement is less stringent than the requirement under Fed. R. Civ. P. 23(b)(3) that common questions predominate.  See O'Brien, 575 F.3d at 584-85 (noting that the district court improperly applied a Rule 23 analysis when it reasoned that the plaintiffs were not similarly situated because individualized questions predominated).  The claims of plaintiff and the employees she seeks to include in the collective action are unified by the common theory of defendant's alleged FLSA violation, and therefore they are similarly situated even if the proofs of this theory is "inevitably individualized and distinct."  Id.  Plaintiff notes that defendant has computerized records which would reflect the time at which employees clocked out for the day, which could be compared with bank records noting the time of the deposits.  See Sisson v. OhioHealth Corp., No. 2:13-cv-517, 2013 WL 6049028 at *7 (S.D. Ohio Nov. 14, 2013)(finding that proposed class of employees who were allegedly required to work "off the clock" was manageable).  At this stage of the process, the

9

court finds that the proposed collective action is manageable.  If discovery later shows the plaintiffs' claims to be so individualized as to render a collective action unmanageable, then defendant may move to decertify the collective action at the second stage of the certification proceedings.  Struck, 2013 WL 571849 at *5 (S.D. Ohio Feb. 13, 2013); Swigart, 276 F.R.D. at 213.

The court finds that plaintiff has submitted evidence sufficient to provide a factual basis for the conditional certification of a collective action in this case, and plaintiff's motion for conditional certification (Doc. 12) is granted.  Pursuant to §216(b), the court hereby conditionally certifies a collective action on behalf of plaintiff and others similarly situated, to consist of:

> All present and former non-exempt hourly employees who: 1) worked for Russell Cellular, Inc., at one of its retail stores during the three years preceding the commencement of this action on November 6, 2013; 2) worked as a full-time employee (forty hours per week) for at least part of that period; and 3) were required as part of their job duties to make bank deposits to a Russell Cellular, Inc., bank account after the end of their regular paid shift.

Plaintiff has also moved for court-authorized notice to similarly situated employees.  The district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit.  Comer, 454 F.3d at 546.  Accurate and timely notice concerning the pendency of a collective action promotes judicial economy because it discourages class members from filing numerous identical suits and allows them to pursue their claims in one case where the same issues of law and fact are already being addressed.  Hoffmann-La Roche Inc. v.

10

Sperling, 493 U.S. 165, 170 (1989).  Judicial notice is also appropriate in this case because timely notification is necessary to preserve the claims of potential plaintiffs whose statutes of limitation continue to run until they file written consent with the court.  Wolfram v. PHH Corp., No. 1:12-cv-599, 2012 WL 6676778 at *3 (S.D. Ohio Dec. 21, 2012).  It is also appropriate to order defendant to produce a list of putative members of the collective action with their home and email addresses and dates of employment. See id., 2012 WL 6676778 at *3-4 (ordering defendant to produce the names, mailing addresses and email addresses, and dates of employees); Swigart, 276 F.R.D. at 215 (compelling defendant to produce list of putative class members).

Plaintiff's motion for court-authorized notice is granted. The court orders that notice be sent by United States mail and by email to all employees and former employees within the collective action conditionally certified above.

Within fourteen days of the date of this order, the parties are directed to jointly submit a proposed notice informing the present and former employees within the collective action of the pendency of this action, and permitting them to opt into the case by signing an opt-in and consent form and submitting the form to the court.

Within fourteen days of the date of this order, defendant shall provide to plaintiff's counsel a roster of present and former employees included within the collective action conditionally certified above, including their full names, their dates of employment, and their last known home addresses and personal email addresses.  All employee information disclosed in accordance with

11

this order shall be used solely for the purpose of sending notice in this litigation.

The court further directs that within thirty days of the approval of the form of notice by the court, said notice shall be sent to the present and former employees listed on the roster using the home and email addresses provided on the roster.  In the event that a new, updated, or corrected mailing address or email address is later found for any of these present or former employees, duplicate copies of the notice may be sent to the new address.

It is so ordered.


Date: March 28, 2014                     s/James L. Graham
                                    James L. Graham
                                    United States District Judge